Ramona Ríos, Appellant, *v.* Registrar of Property of Mayagüez, Respondent.

No. 1080. Submitted December 10, 1940.—Decided December 13, 1940.

*José Sabater* for appellant. The registrar appeared by brief.

Mr. Chief Justice Del Toro delivered the opinion of the court.

In the Registry of Property of Mayagüez there was presented for record a will executed on September 21, 1922, by Eusebio de la Rosa and Ramona Ríos y Méndez, before Notary Amadeo Nazario Lugo, which contained, among others, the following clauses:

"*Third:* That they are both in full possession of their mental power and, I, the notary, certify that before proceeding to draw up this will I have examined the testators and they are of sound mind, their imagination is clear, and they are in full command of their mental powers, without their being incapacitated on any of the grounds provided by law.

"*Fourth:* That it is the will of the testators that, upon the death of either of them, the surviving spouse shall inherit all of the property that may then be owned by them, in order that as such legal heir of the deceased, the survivor may take possession of the estate of the decedent and act as immediate owner upon the death of the latter; and it is the will of the testators that whoever may be the heir shall be exempt from the giving of any bond or from judicial interventions, and they grant to the surviving heir full power, upon the death of either of them, to possess everything without the private intervention of anyone, and whoever may be the survivor shall continue to hold the estate as the succeeding owner thereof and to enjoy the same in its entirety with the blessings of God and the love of the deceased."

With that instrument there were exhibited a receipt evidencing the payment of the tax on the estate of Eusebio de la Rosa, who died in Mayagüez, in February 1937, the death certificate, and another instrument entitled "Ratification of Will," executed before Notary José Sabater, on October 16, 1940, by Juan Mari, Arturo González, and Augusto Ortiz, who were witnesses to the will of September 21, 1922, by virtue of which instrument they attempted to supply certain data which were deemed necessary for the validity of said will.

The registrar denied the record sought in the following decision:

"Record of the foregoing will is denied, after examining other supplementary documents, and in lieu thereof a cautionary notice has been entered for the statutory period, at folio 120 back, volume 171 of Mayagüez, property No. 4926, inscription letter 'A,' because it is noted that said instrument fails to set forth the hour of the execution thereof, or that at least two of the witnesses knew the testator, or that in the opinion of the notary and of the witnesses the testator had legal capacity to make a will, these being incurable defects that are attempted to be cured by deed numbered one hundred and eighty-five executed on the sixteenth of this instant October before Notary José Sabater y García, which can not be done, as a will must be made by a single act, according to the provisions of the Civil Code in force; and because it is further noted that the said will is a joint one and therefore void, in accordance with the provisions of section 618 of the cited Civil Code."

Feeling aggrieved by that decision, Mrs. Ríos, through her attorney, took the present administrative appeal.

■■ We will consider first the question of nullity which is the essential one involved in the appeal.

Section 618 of our Civil Code, 1930 ed., is definite. It says:

"Two or more persons can not make a will conjointly or in the same instrument, either for their reciprocal benefit or for the benefit of a third person.

It is identical with section 669 of the old Code—Spanish Civil Code—in commenting which, Manresa says:

"In the historical résumé that we made in the introduction with which we prefaced our study of the subject of successions, we set forth the doctrine upheld by our old law regarding mutual, joint, or brotherhood wills, to which this section refers, and a further detailed statement is unnecessary, inasmuch as there is involved a form of will which with laudable fitness and with complete reason has become extinct since the publication of this code.

"Allowed by the *Fuero Real* (law 9, title VII, book III), but only between the husband and wife who had no children, the Partidas declared it to be null and void, in order that neither of the testators, 'might be induced to bring about the other's death for the purpose of inheriting his or her property' (law 35, title XI, *Partidas* 5), reserving it, however, for those who were knights and might go into battle or some deed (*hazienda*); but usage extended and authorized so liberally the resort to it, that its abuse very soon revealed the disadvantages which it offered in practice, due to the controversies and litigations to which it frequently gave rise. . . .

"These wills, a shapeless admixture of *mortis causa* disposition and contract, as a distinguished professor characterized them on a solemn occasion, were in conflict with the principle of revocability which is essential in the matter of testamentary succession, and would offer very scant advantages in return for the many disadvantages which they produced by reason of the possible confusion of estates, the lack of spontaneity on the part of the testators, the danger of easy suggestions and evident imposition, especially in the case of wills made by husband and wife, in which often there was a victim of enticement and deceit.

"Science condemned the practice, and wise notaries were not lacking who refused to draw up such instruments knowing from experience that the more energetic spouse ordinarily imposed his or her will or whim upon the weaker one, thus causing the lack on the part of one of the testators of the necessary freedom to dispose of his or her property, by reason of the influence exercised by the other upon such testator." 5 Manresa, *Comentarios al Código Civil Español* (5th ed.), pp. 392, 393.

The said section is also essentially the same as section 3618 of the Argentine Civil Code, regarding which the com-

mentator Antokoletz, in the second volume, p. 911, of his work *"Código Civil"*, says:

"Sec. 3618.—French Code, sec. 968.—Louisiana, 1566.—Neapolitan, 893.—Dutch, 977.—*Contra*, L. 9, Tit. 6, Bk. 6, *Fuero Real.*—See Coin Delisle, regarding the section of the French Code. A will and testament, which is essentially free, essentially dependent upon the ambulatory will of its author, can not be made by the joint act of many persons. An act resulting from the concert of many wills can not generally be changed or modified without the concert of all those wills; and, on the other hand, a testamentary disposition, which is free and independent in the beginning, must remain essentially revocable at the will of its maker. This has given rise to numerous difficulties and to the conflict in the jurisprudence as to the application that should be made of the principle of revocability, either during the life of the testators, or after the death of one of them.

"The prohibition comprises only a will made by various persons in the *same* act. There is nothing to preclude two or more persons from agreeing to make a disposition, each for himself or herself, in favor of a third person, or in favor of either of them; but in such case each testator remains legally entitled, to revoke his or her will when he or she deems it proper.

"The provisions regarding mutual donations are cited in support of the reciprocal wills. But it may be said that the lawmaker should demand a fuller and freer will on the part of a testator than he does on the part of a donor. The risk of a surprise is less where it is sought to dispose actually and irrevocably of a part of the estate than where disposition is made of the latter to take effect at a time when life has already ceased.

"The testator is more susceptible to enticements which will not have a present effect than the donor who will always be cautious in divesting himself of what he owns without any possibility of revocation. The former is freer with his generosity, because he will not witness the consequences thereof; the latter is more reserved due to the feeling which is inspired by the relinquishment of the property. See Demante, vol. 4, No. 113 *bis.*—Marcadé, Troplong, and Coin Delisle, regarding sec. 968."

See also *"Concordancias y Comentarios del Código Civil Argentino"* by Dr. Baldomero Llerena, Buenos Aires, 1931, vol. 9, p. 586, and *"El Código Civil de la República Argen-*

*tina con su explicación y crítica bajo la forma de notas hechas por el Dr. Lisandro Segovia,''* Buenos Aires, 1933, p. 590.

No further comment is necessary. As the nullity of the will appears on the face of the instrument, it having been executed contrary to a definite provision of the law, the registrar was justified in refusing to record it in the books under his charge.

The case of *Ex parte Vázquez,* 34 P.R.R. 234, on which the appellant relies has no application herein. What was there held was that: ''A family letter which possesses all of the requirements of section 696 of the Civil Code and indicates by apt words the deliberate intention of the writer to provide for the disposal of his property after his death has the character of a holographic will.'' It did not involve a joint will.

As to whether or not the defects noted by the registrar existed, and as to whether or not the same could be cured in the way it was sought to do so by the deed of October 16, 1940, nothing need be decided, because since the will was void *ab initio* it having been executed contrary to law, the same could not be validated by the witnesses. The supplemental deed lacks any decisive force.

The appeal does not lie. The decision appealed from must be affirmed.